**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **GEORGE JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 15-2495-STA-cgc** |
| | ) | |
| **SELECT PORTFOLIO SERVICING, INC.;** | ) | |
| **and WELLS FARGO BANK, NATIONAL** | ) | |
| **ASSOCIATION as Trustee for the HOLDERS** | ) | |
| **OF THE FIRST FRANKLIN MORTGAGE** | ) | |
| **LOAN TRUST 2004-FF8, MORTGAGE** | ) | |
| **PASS THROUGH CERTIFICATES** | ) | |
| **SERIES 2004-FF8,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

Before the Court is Defendants Select Portfolio Servicing, Inc. and Well Fargo National Bank, N.A.'s Motion to Dismiss (ECF No. 12) filed on August 31, 2015. Local Rule 12.1(b) requires a party opposing a motion to dismiss to respond within 28 days after the motion is served. On October 13, 2015, the Court entered an order directing Plaintiff George Jones to respond to Defendants' Motion, and Plaintiff filed his response the following day. Defendants have filed a reply brief.[1] For the reasons set forth below, the Motion to Dismiss is **GRANTED**.

## BACKGROUND

Plaintiffs filed their Complaint for Declaratory Judgment and to Set Aside Foreclosure Sale in the Chancery Court of Shelby County, Tennessee, on July 13, 2015. Defendants filed a Notice of Removal on July 27, 2015. For purposes of Defendants' Motion to Dismiss, the Court

---

[1] Defendants filed a motion for extension of time to file their reply brief on October 27, 2015. For good cause shown, the Motion is **GRANTED**.

accepts the following well pleaded allegations of the Complaint as true. Plaintiff and his wife Sharon Jones own real property at 2328 Hickory Forest Drive, Memphis, Tennessee 38119. (Compl. ¶ 1.) Plaintiff "acquired" the property and obtained a mortgage loan on July 2, 2004. (*Id.* ¶¶ 1, 4.)[2] Plaintiff has retained possession of and occupied the property as his primary residence since that time. (*Id.* ¶ 1.) Plaintiff's lender was First Franklin Financial Corporation ("First Franklin"), though Plaintiff believes there is no evidence First Franklin actually funded the loan. (*Id.* ¶ 4.) At all times relevant, Defendant Select Portfolio Servicing LLC serviced Plaintiff's loan. (*Id.* ¶ 2.)

The Complaint alleges that First Franklin held the promissory note on Plaintiff's loan from July 2, 2004, through October 30, 2013. (*Id.*) On October 30, 2013, First Franklin purportedly assigned the loan to the registered holders of the First Franklin Mortgage Loan Trust, Mortgage Pass Through Certificates, Series 2004-FF8 ("First Franklin Mortgage Loan Trust"). (*Id.* ¶ 5.) Defendant Wells Fargo National Bank, N.A. ("Wells Fargo") purportedly acquired Plaintiff's note and was the assignee of Plaintiff's deed of trust. (*Id.*)

On November 22, 2013, Wells Fargo executed an appointment of substitute trustee, retaining the law firm of Rubin Lublin LLC to conduct a foreclosure sale on Plaintiff's home. (*Id.* ¶ 6.) The Complaint alleges upon information and belief that Plaintiff's property was sold at a foreclosure sale on April 30, 2015, to Wells Fargo, as trustee for the First Franklin Mortgage Loan Trust. (*Id.* ¶¶ 6, 31.) Prior to the foreclosure, Plaintiff retained counsel and gave

---

[2] There is some dispute about whether Plaintiff's loan financed his acquisition of the property or whether Plaintiff already held some interest in the property when Plaintiff obtained the loan. Defendants argue that the previous owner of the property's mortgage was not released until July 2, 2004. Plaintiff answers that he and his wife received a quitclaim deed for the property in April 2002 and that their loan from First Franklin was a refinancing. Plaintiff has attached a copy of the filed quitclaim deed as an exhibit to his response brief. At the pleadings stage, the Complaint simply states that Plaintiff "acquired" his property on July 2, 2004. In the final analysis, the Court finds that the fact question on this point does not alter its analysis of Plaintiff's claims.

Defendants notice of rescission of their mortgage loan. (*Id.* ¶ 7.) Plaintiff has attached a copy of the notice as an exhibit to the Complaint. The notice dated October 20, 2014, demanded rescission of the promissory note and deed of trust and the return of all payments made by Plaintiff to Defendants pursuant to 15 U.S.C. § 1635 and §1641. (*Id.*) According to the Complaint, Defendant Select Portfolio Servicing did not file suit against Plaintiff within 20 days of its receipt of Plaintiff's notice of rescission. (*Id.*)

The Complaint alleges a number of facts to call into question the validity of First Franklin's assignment of the note and deed of trust to Wells Fargo in 2013. Plaintiff alleges that Merrill Lynch acquired First Franklin in December 2006. (*Id.* ¶ 8.) According to the records of the Tennessee Secretary of State, First Franklin went out of business in 2007. (*Id.* ¶ 9.)[3] First Franklin found itself in "deep financial trouble" in 2008 and that the president and CEO of First Franklin notified the company's employees in March 2008 that First Franklin was going out of business. (*Id.* ¶ 10.) The Tennessee Secretary of State's records indicate that First Franklin became "inactive" in Tennessee effective July 9, 2009. (*Id.* ¶ 9.) The state of California lists First Franklin's corporate status as "surrendered" some four years before First Franklin purportedly assigned Plaintiff's note and deed of trust to Wells Fargo. (*Id.*)

What is more, the First Franklin Mortgage Trust was created to buy mortgage loans from First Franklin and sell securities backed by the mortgages as part of a REMIC trust. (*Id.* ¶ 11.)[4]

---

[3] The Complaint goes on to allege that the First Franklin entity described on Plaintiff's Deed of Trust originally registered in the state of Tennessee in 1996 and was administratively dissolved in 2005. Compl. ¶ 10. The deed of trust names as the lender "First Franklin Financial Corp., subsidiary of National City Bank of Indiana." Deed of Trust 1, ECF No. 12-2.

[4] According to the Complaint, a real estate mortgage investment conduit ("REMIC") is an "entity that holds a fixed pool of mortgages and issues multiple classes of interests in itself to investors" and is "treated like a partnership for Federal income tax purposes with its income passed through to its interest holders." Compl. ¶ 15. The Complaint goes on to allege a number of other facts about the nature and characteristics of a REMIC trust. *Id.* ¶¶ 16-17.

Under the terms of the agreement to securitize the loans, a company called Securitized Asset Backed Receivables LLC ("SABR") was to execute what were referred to as "responsible party" agreements. (*Id.*) SABR would acquire mortgage loans from First Franklin and other companies and then sell the loans to the trustee of the First Franklin Mortgage Trust. (*Id.*) Wells Fargo, in its capacity as trustee, would hold the mortgage loans for the benefit of the trust's certificate holders. (*Id.*) The Pooling and Servicing Agreement ("PSA") provided that Wells Fargo would deliver the actual mortgage documents, including the promissory notes, to a custodian. (*Id.*) The transfer of the loans would create the corpus of the trust fund. (*Id.*) The PSA did not grant the trustee or the certificate holders the right to alter or amend the terms of the transfer or sale of the mortgage loans in any manner that would affect the Trust's REMIC status with the IRS. (*Id.*) The Complaint alleges that First Franklin never sold Plaintiff's loan to SABR, the entity defined in the PSA as the depositor or seller of the mortgage loans. (*Id.*) The PSA states that SABR in its capacity as depositor was to sell all loans constituting the Trust by a closing date of December 30, 2004. (*Id.* ¶ 25.)

From these premises, Plaintiff alleges that Defendant Wells Fargo as Trustee for the First Franklin Mortgage Loan Trust is not the proper party to enforce the promissory note or foreclose on the deed of trust. (*Id.* ¶ 19.) The First Franklin Mortgage Loan Trust consists only of mortgages acquired by SABR. (*Id.*) SABR never acquired title to the mortgage from First Franklin. (*Id.* ¶ 26.) First Franklin held Plaintiff's mortgage until the assignment of the mortgage in 2013. (*Id.* ¶ 27.)[5] First Franklin's assignment of the note and deed of trust to Wells Fargo, not SABR, did not conform to the PSA, which PSA requires that SABR first acquire a

---

[5] The Complaint alleges that the assignment occurred in 2013 but also refers to "the failed assignment to the Trust in 2012." Compl. ¶ 27. So the Complaint contains a discrepancy about the date of the assignment. This inconsistency, however, has no bearing on the Court's analysis of Plaintiff's claims for relief.

mortgage before the mortgage is transferred to the Trust. (*Id.* ¶ 22.) The Complaint alleges then that "Plaintiff's loan could not have been sold to the Trust to ever become a part of the corpus of the Trust." (*Id.* ¶ 23.) As such, neither Wells Fargo nor Select Portfolio Servicing has standing to enforce the note because the First Franklin Mortgage Loan Trust has no rights in Plaintiff's mortgage. (*Id.* ¶ 24.) Any attempt by Wells Fargo to act on behalf of the Trust now when Plaintiff's mortgage is not part of the trust is void as matter of law. (*Id.*)

For all of these reasons, Plaintiff seeks the following declarations: (1) First Franklin's attempt to transfer the mortgage eight years after the closing date of the Trust is void as a matter of law, depriving Defendants of standing to enforce the terms of the mortgage; (2) First Franklin retained title to Plaintiff's mortgage up to the time of the defective assignment of the mortgage to the First Franklin Mortgage Loan Trust in 2013; (3) Plaintiff's mortgage never became part of the First Franklin Mortgage Loan Trust, and therefore Wells Fargo lacks any right to enforce Plaintiff's note; and (4) Defendants are estopped from claiming any right to enforce Plaintiff's mortgage. (*Id.* ¶ 27.) The Complaint's prayer for relief adds a request for a slightly different declaration on the following terms: "Defendants . . . and their employees, agents and/or servants, are not the holders of the Plaintiff's mortgage as that term is defined by law and forever bar and enjoin the named defendants from heretofore collecting on or enforcing the Plaintiff's mortgage for the [subject property]." (*Id.*, prayer for relief ¶ 1.)

The Complaint next alleges a claim for rescission for Defendants' violations of the Truth in Lending Act ("TILA") and the Act's implementing regulations at 12 C.F.R. § 226.39. (*Id.* ¶ 28.) Plaintiff alleges that Defendants failed to disclose the assignment of Plaintiff's mortgage loan in violation of TILA. (*Id.*) Upon the discovery of Defendants' violation of the Act, Plaintiff exercised his right to rescind the transaction under 15 U.S.C. § 1635. (*Id.* ¶ 29.)

Because Defendants failed to respond to Plaintiff's notice of rescission, Plaintiff is entitled to rescission of the mortgage loan. (*Id.*) The Complaint seeks injunctive relief in the form of setting aside the foreclosure sale and enjoining a forcible entry and detainer warrant, though there is no allegation such a warrant has issued. (*Id.* ¶ 31-33.) The Complaint also seeks damages in the amount of $350,000.00 and punitive damages in the amount of $3.5 million (*Id.* ¶¶ 34, 35, prayer for relief.)

In support of his claim for punitive damages, Plaintiff alleges that Defendants have engaged in "a systemic and nationwide pattern of fraud, relating to their sale, securitization servicing and foreclosure of mortgage loans" by means of "forgery, lies, and deceit in order to deprive the Plaintiff" of his home. (*Id.* ¶ 35.) Specifically, the Complaint alleges that Defendant Select Portfolio knew that First Franklin had not transferred the note to SABR and that First Franklin "still held the Deed of Trust on the Plaintiff's property." (*Id.* ¶ 36.) For its part Wells Fargo continued to collect payments from Plaintiff with the knowledge that it had no right to collect the payments. (*Id.* ¶ 37.) Select Portfolio continued to fraudulently conceal its own lack of standing to collect payments from Plaintiff and eventually initiated foreclosure proceedings against Plaintiff's property. (*Id.* ¶¶ 38, 39.) The Complaint alleges that Defendants undertook all of these actions with the knowledge that the assignment of the deed of trust and transfer of the note did not comply with the terms of the Pooling and Servicing Agreement and presumably did not vest Defendants with any rights in Plaintiff's property. (*Id.* ¶ 40.)

Defendants have moved to dismiss Plaintiffs' Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Defendants have attached to their Motion copies of the deed of trust between Plaintiff and his spouse and First Franklin; First Franklin's corporate assignment of the deed of trust to Wells Fargo Bank, N.A., as the trustee for the First Franklin

Mortgage Loan Trust, dated October 30, 2013; a substitute trustee's deed showing that Wells Fargo acquired Plaintiff's property at a foreclosure sale on April 30, 2015; and a printed copy of First Franklin's internet homepage. Defendants argue that the Complaint fails to state any claim premised on the absence of Wells Fargo's rights to enforce the note and deed of trust or act under the terms of the PSA. The Sixth Circuit has held that a mortgagor lacks standing to challenge a pooling and servicing agreement to which he is not a party or intended beneficiary. Specifically, the Court of Appeals has joined other federal courts in holding that a mortgagor lacks standing to argue that his mortgage is not part of a trust because an assignment of the mortgage occurred after the closing date for the trust stated in a PSA. Defendants argue that the Court should dismiss any claim based on a failure to comply with the requirements of the PSA

Defendants further argue that the Complaint fails to allege plausible facts showing that First Franklin is no longer in business. The Complaint alleges that Merrill Lynch acquired First Franklin but fails to show that First Franklin simply ceased to operate as a going concern after the acquisition. Defendants have attached a printed copy of First Franklin's current website to establish that First Franklin does, in fact, continue to do business. For these reasons, the Complaint fails to state a claim concerning Defendants' standing to foreclose.

With respect to Plaintiff's TILA claim, the Complaint's attempt to rescind the mortgage loan fails. The Complaint alleges that Plaintiff entered into the mortgage transaction in 2004, making any claim for rescission time-barred under TILA's three-year statute of repose. Even if the statute of repose did not bar Plaintiff's TILA claim, a purchase money transaction like Plaintiff's mortgage loan is a "residential mortgage transaction" exempt from TILA's right of rescission. The right of rescission is not a remedy for any purported TILA violation arising out of the assignment of Plaintiff's loan. The Court should conclude then that the Complaint fails to

state a claim for rescission. Finally, Plaintiff seeks punitive damages based on the allegedly fraudulent conduct of Wells Fargo and Select Portfolio. Defendants argue that the Complaint fails to plead the fraud with particularity and otherwise fails for the same reasons that Plaintiff lacks standing to attack the foreclosure for the failure to follow the terms of the PSA. Therefore, the Court should hold that the Complaint fails to state a claim for relief.

Plaintiff has responded in opposition to the Motion to Dismiss. Plaintiff first argues that his claim about Wells Fargo's standing to foreclose has nothing to do with the terms of the PSA. Plaintiff alleges that First Franklin never transferred Plaintiff's promissory note to Wells Fargo and that the statements in the assignment to the contrary are fraudulent and false. First Franklin had ceased to do business by the time of the purported assignment in 2013. Also, the assignment of the note and deed of trust in 2013 was inconsistent with the terms of the First Franklin Mortgage Loan Trust and Wells Fargo's representations to the IRS that such a transfer would not and could not occur. Even if an assignment was attempted, the assignment did not pass title without a properly endorsed note. Plaintiff stresses that Defendants have not produced a copy of the endorsed promissory note. Without that proof, Plaintiff contends that Defendants cannot show that they qualify as holders of the note with the legal right to enforce the note.

Plaintiff next argues that the Court should reject Defendants' argument about a homeowner's lack of standing to challenge the assignment of a promissory note and deed of trust. According to Plaintiff, Defendants erroneously rely on the Sixth Circuit's decision in *Livonia Properties Holdings, LLC v. 12840-12976 Farmington Road Holdings, LLC*, 399 F. App'x 97 (6th Cir. 2010). Plaintiff cites the Court of Appeals' more recent decision in *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249 (6th Cir. 2014), in which the Sixth Circuit held that a homeowner could challenge the validity of an allegedly fraudulent assignment to contest

the assignee's legal title to his mortgage. Plaintiff makes a separate argument that the deed of trust granted him the contractual right to defend his title to the property. As such, Plaintiff has standing to contest Defendants' rights, as the assignees of First Franklin, to enforce the terms of the note.

Plaintiff lastly argues that the Complaint pleads a plausible claim for rescission under TILA. The Complaint alleges that Plaintiff satisfied all of the statutory requirements for rescission. Plaintiff properly gave Defendants notice, and Defendants failed to respond within 20 days as the Act requires. As for Defendants' argument that TILA's right of rescission does not apply in this case, Plaintiff responds that none of the exceptions cited by Defendants are apt. Plaintiff's mortgage was a refinance, not a purchase money transaction. Plaintiff asserts that he and his wife acquired the property by quitclaim deed in November 2002, almost two years before Plaintiff obtained a loan from First Franklin. Plaintiff has attached a copy of the quitclaim deed filed with the Shelby County Register on November 8, 2002. As for the statute of repose, Plaintiff counters that the statute of repose begins to run from the consummation of a contract; however, under Tennessee law, indefiniteness may defeat the formation of an enforceable contract. Although Plaintiff's argument is not clear on this point, Plaintiff's position seems to be that the Court cannot decide the statute of repose issue until Plaintiff learns the actual identity of the lender. Plaintiff contends then that a fact question exists over whether First Franklin actually funded his loan. Plaintiff has made a request for this information in discovery. Therefore, the Court should deny Defendants' Motion to Dismiss.

Defendants have filed a reply brief. Defendants first show that counsel is in possession of the original note. The note itself is endorsed in blank. As a result, the note is bearer paper, and Wells Fargo as the party in possession of the paper has the right to enforce it. The deed of

trust follows the note. These facts therefore dispose of Plaintiff's argument that no assignment of the note took place and that Wells Fargo lacks standing to enforce the terms of the note. As for Plaintiff's claims about defects in the assignment and reliance on *Slorp*, Defendants argue that Plaintiff lacks standing to challenge the assignment. According to Defendants, every court applying Tennessee law has followed *Livonia Properties* and concluded that, in the absence of an allegation that the borrower faces a risk of double payment, a mortgagor lacks standing to assert a defect in the assignment of the mortgage. Defendants maintain then that Plaintiff lacks standing to contest the assignment of his note and deed of trust. For the same reasons, Defendants argue that Plaintiff lacks standing to make a claim based on the Trust's PSA.

With respect to Plaintiff's TILA claim, Defendants cite other recent decisions from this Court holding that TILA's disclosure requirements and the statutory right of rescission do not apply to the assignment of a mortgage. Defendants also cite the chain of title on Plaintiff's property and dispute his claim that his loan from First Franklin was a refinancing. Defendants show that the previous owner's mortgage was released only when Plaintiff obtained his loan from First Franklin. While conceding that they have no knowledge of any additional agreements between Plaintiff and the previous owner, Defendants argue that the record does not suggest or indicate that Plaintiff's loan from First Franklin in 2004 was a refinance of an existing mortgage. Therefore, the Court should dismiss Plaintiff's TILA claim for rescission.

## STANDARD OF REVIEW

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true

and construe all of the allegations in the light most favorable to the non-moving party.[6]

However, legal conclusions or unwarranted factual inferences need not be accepted as true.[7]  "To

avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential

allegations with respect to all material elements of the claim."[8]  Under Rule 8 of the Federal

Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim

showing that the pleader is entitled to relief."[9]  Although this standard does not require "detailed

factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation

of the elements of a cause of action."[10]  In order to survive a motion to dismiss, the plaintiff must

allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative

level" and to "state a claim to relief that is plausible on its face."[11]  "A claim has facial

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."[12]

## ANALYSIS

### I. Claim for Declaratory Relief Concerning Well Fargo's Right to Foreclose

---

[6] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

[7] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[8] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[9] Fed. R. Civ. P. 8(a)(2).

[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  *See also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

[11] *Twombly*, 550 U.S. at 555, 570.

[12] *Iqbal*, 556 U.S. at 678.

Plaintiff's Complaint seeks a declaration that Defendants lack the right to enforce the promissory note and deed of trust. The Complaint alleges a number of facts to show that First Franklin's assignment of Plaintiff's note and deed of trust to Wells Fargo in 2013 was void. Plaintiff therefore seeks a declaration that Defendants had no right to conduct the foreclosure on his property and an injunction setting aside the foreclosure. Defendants argue that Plaintiff has failed to state his claim because Wells Fargo possesses the note endorsed in blank by First Franklin and Plaintiff lacks standing to contest the assignment of the note or the alleged failure of the parties to comply with the PSA's requirements for pooling Plaintiff's note with the rest of the First Franklin Mortgage Trust. The Court finds that Defendants have the better of the argument.

The Court holds that Plaintiff has failed to state a plausible claim for relief based on his contention that Defendants do not have the right to foreclose. The instruments themselves establish (1) that Wells Fargo possesses the note endorsed in blank and (2) that First Franklin assigned its interest in Plaintiff's deed of trust to Wells Fargo in 2013. Wells Fargo has produced a copy of the deed of trust (ECF No. 12-2), First Franklin's recorded assignment of the deed of trust to Wells Fargo in 2013 (ECF No. 12-3), and the promissory note endorsed in blank by Pamela Hall, closer, on behalf of First Franklin (ECF No. 21-2). All of the exhibits are properly considered part of the pleadings for purposes of analyzing Defendants' Motion to Dismiss because the Complaint refers to each document and the documents are central to Plaintiffs' claims for relief.[13]

---

[13] An instrument attached as "an exhibit to a pleading is a part of the pleading for all purposes" under Federal Rule Civil Procedure 10(c) where as here a plaintiff alleges a claim based upon a contract or other instrument. Fed. R. Civ. P. 10(c). Rule 10(c) is permissive, and a plaintiff is under no obligation to attach to his complaint documents upon which his action is based. *Id.* Where a plaintiff fails to attach an instrument to the complaint, however,

First, Wells Fargo has shown that it has possession of Plaintiff's promissory note endorsed in blank. Wells Fargo is therefore entitled under Tennessee law to enforce the note. The Tennessee UCC provides that a "person entitled to enforce" an instrument is "(i) the holder of the instrument, (ii) a non-holder in possession of the instrument who has the rights of a holder, or (iii) a person not in possession of the instrument who is entitled to enforce the instrument" under other sections of the UCC, which do not appear to be relevant here.[14] A holder is defined to mean "a person who is in possession of an instrument . . . indorsed . . . in blank,"[15] and "a holder remains a holder although that person had made an assignment of a beneficial interest therein."[16] In fact, the UCC is clear that a person "is entitled to enforce the instrument even if the person is not the owner of the instrument or in wrongful possession."[17] Wells Fargo's possession of the note endorsed in blank establishes Wells Fargo's right to enforce the note and foreclose on Plaintiff's property. Plaintiff's Complaint alleges no facts to show that Wells Fargo lacks the legal right to enforce the note as a "holder" for purposes of Tennessee law. Therefore, the Complaint has failed to state any claim premised on Wells Fargo's lack of rights in the note.

Second, the instruments show that the assignment of the deed of trust transferred to Wells Fargo Bank, N.A., as Trustee, on behalf of the registered holders of First Franklin Mortgage

---

"[d]ocuments that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [his] claim." *Id.*

[14] Tenn. Code Ann. § 47–3–301.

[15] § 47–1–201.

[16] 1 Anderson U.C.C. § 1-201-257; *In re Martinez*, 455 B.R. 744, 763 (Bankr. D. Kan. 2011).

[17] *Id.*; see also *Donaldson v. BAC Home Loans Servicing, L.P.*, 813 F. Supp. 2d 885, 894–96 (M.D. Tenn. 2011) (holding that party had right to enforce a promissory note and conduct foreclosure even though the note was not endorsed).

Loan Trust, mortgage pass-through certificates, series 2004-FF8, all of First Franklin's interest in the deed of trust executed by Plaintiff on July 2, 2004, and securing his property at 2328 Hickory Forest Drive, Memphis, Tennessee 38119. The assignment was signed by Pablo Zuniga, assistant vice-president of First Franklin, and witnessed by a notary public of the state of California. The notary attested that Mr. Zuniga "personally appeared" before him and "proved to [him] on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument."[18] This proof properly authenticates the assignment for registration with a county register under Tennessee law.[19] First Franklin caused the assignment to be recorded with the Shelby County Register on November 25, 2013. Therefore, the assignment on its face shows that First Franklin assigned its interests to Wells Fargo.

Plaintiff's claims for declaratory and injunctive relief are founded on two separate factual allegations about defects in the assignment, both of which the written instruments themselves contradict. Plaintiff first alleges that First Franklin had ceased to operate by 2013, implying that First Franklin could not have assigned Plaintiff's deed of trust to Wells Fargo. Plaintiff cites a number of facts about First Franklin's filings and registration with the Tennessee Secretary of State. Plaintiff has attached copies of the Secretary of State's records for First

---

[18] Corporate Assignment of Deed of Trust (ECF No. 12-3).

[19] *In re Marsh v. Fleet Mortg. Grp.*, 12 S.W.3d 449, 453 (Tenn. 2000) (holding that a notary seal "provides prima facie proof of a notary's official character . . . [and] authenticates the instrument"); see also *Hutchens v. Bank of America N.A.*, 2012 WL 1618316, at *10 (E.D. Tenn. 2012).

Franklin, showing that First Franklin's most recent registration in Tennessee was withdrawn in 2009 and that the Secretary of State's office currently lists First Franklin as inactive.

But these allegations only show that First Franklin was not registered as an active corporation "transacting business" in Tennessee at the time of the assignment in 2013. Tennessee prohibits a foreign corporation from "transacting business" in the state "until it obtains a certificate of authority from the secretary of state."[20] Tennessee specifically exempts from its definition of "transacting business" the following activities: "[c]reating or acquiring indebtedness, deeds of trust, mortgages, and security interests in real or personal property" and "[s]ecuring or collecting debts or enforcing mortgages, deeds of trust, and security interests in property securing the debts."[21] The statutory definitions are easily broad enough to include assigning a deed of trust and exempting that activity from the definition of "transacting business" in the state of Tennessee. As such, whatever First Franklin's status as a foreign corporation was in Tennessee in 2013, Plaintiff's allegations and the records of the Secretary of State do not show that First Franklin could not have assigned the deed of trust to Wells Fargo in 2013. Therefore, Plaintiff's allegations about First Franklin's registration with the Tennessee Secretary of State do not actually show that First Franklin did not assign Wells Fargo its interests in Plaintiff's deed of trust in 2013.

Moreover, the assignment of the note is not dispositive because Wells Fargo has shown that it possesses the note itself endorsed in blank. "It is well-settled under Tennessee law that the transfer of a note automatically carries with it the lien created by the accompanying deed of trust

---

[20] Tenn. Code Ann. § 48-65-101(a).

[21] § 48-65-101(b)(7)&(8).

or other instrument securing it."[22]  Strictly speaking, the assignment of the deed of trust and a recording of the assignment did not alter Wells Fargo's rights as a holder of the note to enforce the terms of the indebtedness.  And to the extent that the instruments contradict the fact allegations of the Complaint, the instruments trump the allegations of the pleadings.[23]  Therefore, the Complaint's allegations about First Franklin ceasing to be registered as a foreign corporation transacting business in Tennessee does not establish that First Franklin could not transfer Plaintiff's note to Wells Fargo in 2013 and that Wells Fargo's could not then enforce the note.

Plaintiff also cites extensively to the Pooling and Servicing Agreement of the First Franklin Mortgage Trust, pointing out two ways in which First Franklin's assignment of his mortgage violated the terms of the PSA.  First Franklin assigned the mortgage in 2013, even though the PSA provided that the Trust would close and acquire no additional mortgages after December 30, 2004.  And First Franklin transferred Plaintiff's mortgage directly to Wells Fargo without involving SABR.  The PSA specifically established SABR, a separate entity, as the depositor for the Trust and a procedure whereby SABR acquired mortgages from First Franklin and and then transferred the mortgages to the Trust with Wells Fargo acting as trustee.  Plaintiff alleges that First Franklin's failure to follow the PSA's procedure prevented his mortgage from becoming part of the First Franklin Mortgage Loan Trust and made the assignment of his mortgage void as a matter of law.

Even accepting as true Plaintiff's allegations about First Franklin's failure to comply with the terms of the PSA, the Court holds that Plaintiff lacks contractual standing to challenge these

---

[22] *Dauenhauer v. Bank of New York Mellon*, 562 F. App'x 473, 479 (6th Cir. 2014) (citing *W.C. Early Co. v. Williams*, 186 S.W. 102, 103–04 (Tenn. 1916)).

[23] *Creelgroup, Inc. v. NGS Am., Inc.*, 518 F. App'x 343, 347 (6th Cir. 2013) (citations omitted).

defects. The Sixth Circuit has held, most notably in *Livonia Properties Holdings, LLC v. 12840–12976 Farmington Road Holdings, LLC*, that a homeowner lacks contractual standing to challenge the assignment of his mortgage.[24] This bar on standing finds its origin not in Article III but in state contract law.[25] "Assignments are contracts and, as a general matter, are regulated by the common law of contracts."[26] Furthermore, a homeowner lacks standing under state contract law to challenge an assignment of a mortgage or deed of trust under a pooling and servicing agreement, to which he is not a party or third-party beneficiary. "Courts have consistently rejected borrowers' requests to have mortgage assignments and foreclosures invalidated due to non-compliance with Pooling and Servicing Agreement provisions, based on borrowers' lack of standing."[27] Courts applying Tennessee law have reached the same result and concluded that a homeowner lacks contractual standing under Tennessee law to contest a defect in the assignment of his mortgage loan, including a failure to follow the procedures established under a pooling and servicing agreement.[28] In light of this well-established authority, the Court

---

[24] *Livonia Props. Holdings, LLC v. 12840–12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97, 102 (6th Cir. 2010). ("[T]here is ample authority to support the proposition that a litigant who is not a party to an assignment lacks standing to challenge that assignment."); *Facione v. CHL Mortg. Trust 2006-J1*, No. 14-2613, 2015 WL 5933475, at *1 (6th Cir. Oct. 9, 2015); *Connolly v. Deutsche Bank Nat. Trust Co.*, 581 F. App'x 500, 507 (6th Cir. 2014); *Staley v. Bank of New York Mellon*, 564 F. App'x 227, 228 (6th Cir. 2014); *Yuille v. Am. Home Mortg. Servs., Inc.*, 483 F. App'x 132, 135 (6th Cir. 2012) (per curiam).

[25] *Facione*, 2015 WL 5933475, at *1 (distinguishing contractual standing under state law from Article III standing under federal law).

[26] *Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 254 (6th Cir. 2014) (citing 6A C.J.S. *Assignments* § 123 (2014)).

[27] *Dauenhauer*, 562 F. App'x at 480; *Kumar v. U.S. Bank Nat. Ass'n*, 555 F. App'x 490, 492 (6th Cir. 2014); *Smith v. Litton Loan Servicing, LP*, 517 F. App'x 395, 397–98 (6th Cir. 2013); *Robinson v. Select Portfolio Servicing, Inc.*, 522 F. App'x 309, 312 (6th Cir. 2013).

[28] *E.g. Dauenhauer*, 562 F. App'x at 480 (applying Tenn. law); *Berry v. Mortg. Elec. Registration Sys.*, W2014-02175-COA-R3-CV, 2015 WL 5121542, at *3 (Tenn. Ct. App. Aug.

concludes that Plaintiff lacks standing to challenge First Franklin's failure to comply with the First Franklin Mortgage Loan Trust's Pooling and Servicing Agreement.

And no exception to *Livonia Properties*' general rule applies in this case. The Sixth Circuit has held that the general bar on standing is subject to a number of exceptions. A homeowner "may assert as a defense any matter which renders the assignment absolutely invalid or ineffective, or void."[29] Specifically, the homeowner is permitted to challenge an assignment on grounds of the nonassignability of the instrument, the assignee's lack of title, or a prior revocation.[30] The underlying rationale of each exception is the need to provide homeowners with recourse to "protect themselves from having to pay the same debt twice."[31] Wells Fargo has shown that First Franklin endorsed Plaintiff's note in blank and that Wells Fargo is in possession of the note. The Complaint does not allege that any party other than Defendants has demanded payment from Plaintiff. There is no reason to find then that Plaintiff is in jeopardy of paying the same debt twice or will suffer any other prejudice as a result of any failure to comply with the terms of the First Franklin Mortgage Loan Trust's PSA.

While acknowledging the standing rule of *Livonia Properties* and its progeny, Plaintiff argues that his claim falls under an exception to the rule because he has alleged that the assignment of his mortgage was fraudulent. Plaintiff relies on the Sixth Circuit's decision in *Slorp v. Lerner, Sampson & Rothfuss* where a homeowner raised a claim of fraud in connection

---

31, 2015); *Bishop v. JP Morgan Chase Bank, N.A.*, No. 14-2711, 2015 WL 4603859, at *8 (W.D. Tenn. July 30, 2015); *Cariaco v. B17 Holdings, LLC*, No. 3:13-CV-401, 2014 WL 2208936, at *3 (E.D. Tenn. May 28, 2014).

[29] *Livonia Properties*, 399 F. App'x at 102 (quoting 6A C.J.S. *Assignments* § 132 (2010)).

[30] *Id.*

[31] *Id.*

with the assignment of his mortgage. The plaintiff in *Slorp* had entered into a mortgage with Countrywide Bank in 2007. Bank of America filed suit for judicial foreclosure on the mortgage in 2010. To establish its right to foreclose on the mortgage, Bank of America alleged that MERS had assigned Slorp's mortgage to Bank of America. According to the assignment, Shellie Hill, an assistant secretary and vice-president of MERS, executed the assignment on behalf of MERS granting Bank of America an interest in Slorp's mortgage. Slorp noticed a deposition to question Hill about the assignment and her authority to execute the assignment on behalf of MERS. Before the deposition could occur, Bank of America voluntarily dismissed the suit.

Thereafter, Slorp filed a federal complaint against the law firm retained by Bank of America to handle the foreclosure for violations of the federal Fair Debt Collection Practices Act, the Ohio Consumer Sales Practices Act, falsification in violation of an Ohio statute, and civil conspiracy to commit falsification. Slorp specifically alleged that Hill was not an employee of MERS at the time of the assignment and had executed the false assignment at the behest of the law firm in an effort "to mislead the judge in the performance of her official function within the foreclosure action."[32] The district court held that Slorp lacked contractual standing to attack the allegedly fraudulent assignment based on *Livonia Properties*. The district court granted the law firm's Rule 12(b)(6) motion, denied Slorp leave to amend his pleadings, and dismissed the complaint.

On appeal the Sixth Circuit held that *Livonia Properties* did not apply to bar Plaintiff's suit, reasoning that Slorp's claim arose under an exception whereby "a non-party homeowner may challenge a putative assignment's validity on the basis that it was not effective to pass legal

---

[32] *Slorp*, 587 F. App'x at 252.

title to the putative assignee."[33]  Slorp's claim was not that some technical defect existed in the assignment of his mortgage.  Rather Slorp alleged that the individual who executed the assignment of his mortgage on behalf of MERS lacked the authority to execute the assignment, making the assignment void as a matter of contract law.  In other words, Slorp's claim was that the assignment itself was executed with fraudulent intent and that his injuries stemmed from Bank of America's wrongful foreclosure action, and not just the void assignment.

The Court finds *Slorp* instructive but distinguishable on its facts.  *Slorp* involved allegations of fraud in the execution of an assignment, an allegation which if true would render the assignment void.  Plaintiff has not alleged any claim that would render First Franklin's assignment of his deed void, his argument to the contrary notwithstanding.  The Complaint plainly alleges that Wells Fargo lacks the right to foreclose on Plaintiff's note and deed of trust because the assignment from First Franklin to Wells Fargo was inconsistent with the Pooling and Servicing Agreement.  Under Sixth Circuit precedent, this is precisely the kind of claim homeowners lack standing to bring.  It is true that the Complaint goes on to allege a claim for punitive damages and that Defendants acted with fraudulent intent by foreclosing on Plaintiff's property with the knowledge that the parties to the assignment had not complied with the terms of the PSA.  But Plaintiff has failed to plead any fraud with particularity.

And unlike *Slorp*, the Complaint does not allege, much less allege with particularity, that Wells Fargo procured the assignment of Plaintiff's deed of trust by some fraud, for example, the individual executing the assignment on behalf of First Franklin lacked the authority to do so.  Put another way, there is no allegation that either Defendant perpetrated a fraud or conspired specifically to obtain rights in Plaintiff's property, such that the assignment is void as a matter of

---

[33] *Id.* at 255.

law. Whatever conclusory label Plaintiff's brief might put on his claim, it remains a claim that the assignment did not satisfy the requirements of the PSA and thus prevented Wells Fargo from holding title or an enforceable interest in Plaintiff's property. As a result, Plaintiff's claim falls squarely within the ambit of *Livonia Properties*.

Plaintiff has also argued that he has standing to challenge First Franklin's failure to comply with the PSA by virtue of his covenants in the deed of trust. Plaintiff and First Franklin entered into the deed of trust for two ostensible purposes: (1) to secure to First Franklin the repayment of the loan and (2) to ensure Plaintiff's performance of his covenants and agreements in the deed of trust and the note.[34] Plaintiff's covenant in the deed of trust provided that he was "seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record" and that he "warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record."[35] Plaintiff's covenant is a classic warranty of title, promising to defend his good title to the property and ensure that the indebtedness secured by the property would be repaid. Such a warranty is enforceable against Plaintiff. But nothing in the covenant, or the rest of the deed of trust for that matter, grants Plaintiff standing to challenge the assignment of the deed of trust on the grounds that First Franklin did not follow the PSA's requirements for assigning a mortgage to the Trust.

Having concluded that the instruments themselves establish Wells Fargo's right to enforce the note and deed of trust and that Plaintiff lacks standing to challenge any defect in the

---

[34] Deed of Trust 3, ECF No. 12-2.

[35] *Id.*

assignment, Defendants' Motion to Dismiss the claim for declaratory relief concerning Wells Fargo's right to foreclose is **GRANTED**.

## II. Rescission under the Truth in Lending Act

Plaintiff next seeks rescission of his note and deed of trust for violations of the Truth in Lending Act. Plaintiff alleges that Defendants violated TILA by failing to provide notice of the 2013 assignment of his note and deed of trust. The Complaint alleges that Plaintiff gave Defendant Select Portfolio notice of his intent to rescind the mortgage in October 2014 and that Select Portfolio failed to respond to the notice within the time allowed under the Act. "TILA requires that creditors make certain disclosures as to the terms of lending arrangements and provides for civil liability for failure to comply with its provisions."[36] Among the disclosures required under the Act, a creditor that becomes the new owner or assignee of a mortgage loan must give the borrower written notice within 30 days of the sale, transfer, or assignment of the loan.[37] The written notice must include the identity and contact information of the new creditor, the date of the transfer, instructions on how to reach a party with authority to act on behalf of the new creditor, the location of the place where the transfer of ownership is recorded, and other relevant information.[38] In this case Plaintiff seeks the remedy of rescission pursuant to 15 U.S.C. § 1635.[39] Defendants argue that rescission is not available because the three-year statute of

---

[36] *United States v. Petroff-Kline*, 557 F.3d 285, 294 (6th Cir. 2009).

[37] 15 U.S.C. § 1641(g)(1).

[38] *Id.*

[39] Compl. ¶ 29.

repose has run on such a claim and Plaintiff's mortgage loan is exempt from TILA's right of rescission. The Court agrees.

TILA allows a consumer to exercise the right of rescission in limited, specific circumstances. Under 15 U.S.C. § 1635(a),

> in the case of any consumer credit transaction (including opening or increasing the credit limit for an open end credit plan) in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Bureau, of his intention to do so.[40]

Section 1635(d) goes on to provide that the right of rescission "shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor."[41] The question for the Court is whether TILA allows Plaintiff to exercise the right of rescission as a remedy for Defendants' alleged failure to disclose the 2013 assignment of Plaintiffs' deed of trust.

This Court has recently considered this issue in two other cases and held that rescission is not available as a remedy for the failure to disclose the assignment of a residential mortgage under 15 U.S.C. § 1641(g) and 12 C.F.R. § 226.39. In *Robertson v. U.S. Bank*, 14-cv-02677-SHM-cgc, United States District Judge Samuel H. Mays reasoned that 15 U.S.C. § 1635(f) grants an obligor a "three-year continuing right of rescission only when the creditor fails to make all

---

[40] 15 U.S.C. § 1635(a).

[41] § 1635(d).

required, <u>material</u> disclosures about a consumer credit transaction."[42]  An assignment is not one of the material disclosures listed or identified in TILA.  Judge Mays concluded then that a violation of the TILA disclosure requirement under § 1641(g) would not entitle a plaintiff to the three-year right to rescind available under § 1635(f).  The undersigned found *Robertson* to be persuasive and followed its reasoning in *Wigley v. American Equity Mortgage*, No. 15-2473-STA-cgc.  In granting the defendant's motion to dismiss a claim for rescission, the Court in *Wigley* concluded that the assignment of a deed of trust did not trigger a three-year right to rescind the mortgage transaction.[43]  Plaintiff's claim for rescission in this case fails for the same reasons.  Therefore, the Court holds that Plaintiff has failed to state a claim for rescission under TILA based on the notice of rescission Plaintiff served on Defendant Select Portfolio in October 2014.

Plaintiff opposes the dismissal of his rescission claim, arguing that the true identity of his lender was unknown at the time he executed the deed of trust, and questions of fact remain about the lender's actual identity.  In this regard the Complaint alleges on information and belief that "there is no evidence that First Franklin in fact funded the Plaintiff's loan."[44]  Plaintiff adds in his brief that no meeting of the minds ever occurred.  Plaintiff's argument on this point is somewhat unclear.  Plaintiff seems to imply that the identity of the true lender might support the remedy of rescission.  But Plaintiff's allegations about the true identity of the lender and the

---

[42] Order Granting Mot. for Summ. J. 33, Oct. 20, 2015, *Robertson v. U.S. Bank NA et al.*, No. 14-cv-02677-SHM-cgc, ECF No. 32 (citing *Barret v. JP Morgan Chase Bank, N.A.*, 445 F.3d 874, 882 (6th Cir. 2006)).

[43] *Wigley v. Am. Equity Mortg.*, No. 15-2473-STA-cgc, 2015 WL 7292562, at *7 (W.D. Tenn. Nov. 17, 2015).

[44] Compl. ¶ 4.

origination of the loan in 2004 have little bearing on Plaintiff's claim that Defendants failed to disclose the assignment of the deed of trust in 2013 in violation of TILA. As the Court has already explained, rescission is not available for the failure to disclose the assignment of a deed of trust.

Plaintiff's argument about the identity of the true lender perhaps confuses the grounds for statutory rescission under TILA and equitable rescission under Tennessee contract law. "Although rescission is not favored in Tennessee,"[45] rescission is an equitable remedy where a contract is the product of fraud or mutual mistake.[46] Even then rescission is "not enforceable as a matter of right" but a remedy entrusted to "the sound discretion of the trial court" and exercised only "sparingly."[47] Plaintiff's argument seems to be that the Complaint states a claim for rescission based on the allegation that First Franklin was not the actual lender, perhaps implying fraud or mistake. However, Plaintiff's Complaint does not actually allege any facts to show fraud or mutual mistake and therefore fails to plead an equitable claim for rescission under Tennessee law. The Complaint only alleges that Plaintiff exercised his right of rescission as a statutory remedy under TILA and only after he discovered Defendants' purported violation of TILA, i.e. the failure to disclose the assignment of his deed of trust.

---

[45] *Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc.*, 102 S.W.3d 621, 631 (Tenn. Ct. App. 2002).

[46] *Vance v. Schulder*, 547 S.W.2d 927, 931 (Tenn. 1977) ("An individual induced by fraud to enter into a contract may elect between two remedies. He may treat the contract as voidable and sue for the equitable remedy of rescission or he may treat the contract as existing and sue for damages at law under the theory of 'deceit.'"); *Klosterman Dev. Corp.*, 102 S.W.3d at 632 ("In order to authorize relief for mistake the mistake generally must have been mutual, and it must have been material, and not due to the complainant's negligence; and complainant must show injury.").

[47] *Klosterman Dev. Corp.*, 102 S.W.3d at 632 (citing *Early v. Street*, 241 S.W.2d 531 (Tenn. 1951)) (other citations omitted).

Furthermore, Plaintiff alleges that he gave notice to Select Portfolio in October 2014 of his intent to rescind "per the terms of 15 U.S.C. § 1635."[48] And as Plaintiff notes in his brief, rescission under TILA is accomplished simply by giving the notice required under the Act.[49] The Complaint essentially seeks a declaration that Plaintiff's notice was effective "to rescind the transaction pursuant to [TILA]."[50] By contrast, Tennessee does not grant a party to a contract the right to rescind as a matter of course. Even viewing the Complaint in the light most favorable to Plaintiff, the allegations merely support a claim for rescission under TILA, not an equitable claim for rescission under Tennessee contract law. In sum, Plaintiff has not shown how any question regarding the identity of the true lender at the time his loan closed in 2004 makes out a claim for rescission under TILA. Therefore, Defendants' Motion to Dismiss Plaintiff's TILA claim for rescission is **GRANTED**.

## III. Punitive Damages

Finally, the Complaint seeks an award of punitive damages against Defendants for allegedly fraudulent conduct surrounding First Franklin's assignment of Plaintiff's deed of trust and transfer of the note to Wells Fargo. The Complaint makes a number of allegations in support of the request for punitive damages, some of which are not completely clear. In essence, the Complaint restates the allegations about Defendants' failure to follow the terms and provisions of the Pooling and Servicing Agreement and alleges that Defendants acted knowingly. Plaintiff further alleges that Defendants employed "forgery, lies, and deceit" as part of "a systemic and

---

[48] Compl. ¶ 29.

[49] *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S. Ct. 790, 792 (2015) ("The language [of 15 U.S.C. § 1635(f)] leaves no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind.").

[50] Compl. ¶ 30.

nationwide pattern of fraud" relating to the securitization of mortgage loans and conduct of foreclosure proceedings. According to the Complaint, Defendants "fraudulently concealed" their lack of standing to collect payments, enforce the note, and ultimately "defraud the Plaintiff of his home."[51]

Defendants move to dismiss the claim in their opening brief, and Plaintiff has failed to respond to the argument in his brief. The Sixth Circuit has held that a party's failure to respond or oppose a motion to dismiss may result in waiver of the issue raised in the motion to dismiss.[52] The Court will grant Defendants' Motion to Dismiss the fraud claim and prayer for punitive damages for this reason alone. Even on the merits, the Court holds that the Complaint fails to state a claim for punitive damages based on fraud with the requisite particularity. "Under Tennessee law, punitive damages are proper only if a defendant has acted either (1) intentionally, (2) fraudulently, (3) maliciously, or (4) recklessly."[53] Rule 9(b) of the Federal Rules of Civil Procedure 9(b) requires a party to support a fraud claim by stating with particularity "the circumstances constituting fraud." Plaintiff has alleged fraud and fraudulent concealment but little else. Plaintiff's allegations of a "systemic and nationwide" fraud are too conclusory to state a claim. And for the reasons already discussed, Plaintiff lacks standing to pursue any claim

---

[51] *Id.* ¶¶ 38-40.

[52] *Evans v. Laborers' Dist. Council & Contractors' Pension Fund of Ohio*, 602 F. App'x 608, 617 (6th Cir. 2015); *Allstate Ins. Co. v. Global Med. Billing, Inc.*, 520 F. App'x 409, 412 (6th Cir. 2013); *Humphrey v. U.S. Attorney Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008); *Resnick v. Patton*, 258 F. App'x 789, 790–91, n. 1 (6th Cir. 2007).

[53] *Wright v. Citizen's Bank of E. Tenn.*, No. 15-5406, 2016 WL 97673, at *9 (6th Cir. Jan. 8, 2016) (quoting *Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896, 901 (Tenn. 1992)).

based Defendants' alleged failure to comply with the Pooling and Servicing Agreement. Therefore, the Motion to Dismiss is **GRANTED** as to this issue.

## CONCLUSION

Plaintiff's Complaint fails to state a claim for declaratory or injunctive relief, claim for violation of TILA, or claim for punitive damages. Therefore, Defendants' Motion to Dismiss must be **GRANTED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: February 10, 2016.